**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Wayne SCAIFE (83–5666), Terrence Vessells (83–5717), Defendants-Appellants.**

**Nos. 83–5666, 83–5717.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 2, 1984.

Decided Nov. 29, 1984.

Rehearing and Rehearing En Banc
Denied Jan. 21, 1985.

Mike Etoch (argued), Helena, Ark., James P. Diamond, Jackson, Tenn., for defendant-appellant in No. 83–5666.

Edward Chandler, Memphis, Tenn., for defendant-appellant in No. 83–5717.

W. Hickman Ewing, Jr., U.S. Atty., Timothy R. DiScenza, R. Larry Brown, Asst. U.S. Atty. (argued), Memphis, Tenn., for U.S.

Before MARTIN and CONTIE, Circuit Judges, and DOWD, District Judge.[*]

CONTIE, Circuit Judge.

Terrence Vessells and Wayne Scaife appeal their criminal convictions resulting from a jury trial. Both were convicted of conspiracy to violate the Hobbs Act, *see* 18 U.S.C. § 1951 (Count I), and of aiding and abetting the unlawful possession of firearms during the commission of a felony, *see* 18 U.S.C. §§ 2 and 924(c)(2) (Count II). Moreover, Vessells was convicted of knowingly attempting to use intimidation or physical force with intent to cause a person to be absent from an official proceeding to which such person had been summoned and to hinder, delay or prevent communication to a law enforcement officer of information relating to the commission or possible commission of a federal crime, *see* 18 U.S.C. § 1512 (Count III). Vessells raises ten assignments of error, five of which are also asserted by Scaife. For the reasons set forth below, we reverse the convictions of both defendants on Count II and affirm the other convictions.

**I.**

Viewed in the light most favorable to the government, the evidence introduced at trial showed that Vessells telephoned Stidman in Memphis on January 1, 1983 and asked him to travel to Vessells' home in Helena, Arkansas in order to discuss business. Stidman did so the next day and the two discussed robbing a fur store in Elaine, Arkansas with which defendant Scaife was familiar. Later that day, Vessells, Stidman and Scaife met at the latter's home to plan the robbery of the fur store and of Foote's General Store in Ferguson, Arkansas. The three men agreed that Stidman would return to Memphis and contact Johnson. Johnson would then contact Ricky Jones and Anthony Armstrong, both of whom had previously helped Johnson commit a burglary. Unknown to anyone, Jones and Armstrong had since become FBI informants. After speaking to Johnson, Jones and Armstrong informed FBI Agent Young of the impending robberies on January 3.

On January 4, Scaife informed Vessells and Stidman that the fur store robbery would have to be postponed because a refrigerator truck in which to transport the furs had not been obtained. The three men agreed to proceed with robbing the general store. Johnson contacted Jones and Armstrong that evening, gave them money and told them to be ready the next morning.

On January 5, Jones called Stidman's home from the Memphis FBI office and talked to Johnson. Jones said that he would recruit Hosea Moore to help with the robbery. The conversation established that the robbery was to occur ninety miles from Memphis, that a shot gun and a .38 caliber pistol were to be used, and that the store owner had a large quantity of food stamps and cash on hand. After this conversation was recorded, Jones agreed to wear a body tape recorder. The FBI initiated surveillance of Jones' car with five automobiles and an airplane.

Sometime before 12:30 P.M. on January 5, Stidman drove to Vessells' home in Helena, picked up Vessells' maroon Dodge and drove it to Scaife's home. Between 12:30 P.M. and 1 P.M., Stidman telephoned Johnson from Scaife's home and stated that everything was "go".

---

[*] The Honorable David D. Dowd, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

Shortly thereafter, Johnson, Jones, Armstrong and Moore met in Memphis and proceeded to Stidman's home in Jones' car. The group placed two shotguns and two pistols in the car and then left for Helena. Upon arriving there, Johnson telephoned Vessells to determine whether Stidman had already reached Elaine. After this conversation, the group left for Elaine.

During this trip, Johnson stated that the general store might contain as much as $100,000 cash and $150,000 in illegally obtained food stamps. The owner and one or two women would be in the store. Jones, Moore and Armstrong were to enter and commit the robbery. Johnson indicated that the safe would be open but warned that the owner might have a gun beneath the cash register. Stidman and Johnson would wait outside with shotguns. Vessells and Scaife were to position themselves, armed, north and south of the store. After the robbery, everyone would meet at an abandoned church between Elaine and Ferguson to divide the money. Scaife would sell the food stamps later.

Once in Elaine, the group met Stidman. Gloves and duct tape were purchased at a nearby store.[1] Stidman and Johnson then led the way to Ferguson in Vessells' car. Jones, Armstrong and Moore followed in Jones' car. As the group assembled for the robbery at approximately 7:00 P.M., the FBI descended and arrested all five men. The FBI recovered a sawed off twenty gauge shotgun and shells, a loaded twelve gauge shotgun, a loaded .22 caliber revolver, handcuffs, gloves and duct tape.[2]

Stidman and Johnson eventually pleaded guilty and agreed to testify against the defendants. Before doing so, Stidman asked the defendants to help Johnson and himself pay their attorneys. Stidman testified that the defendants agreed jointly to contribute $10,000 but Vessells denied this. Stidman further stated that Vessells threatened him during conversations occurring after the arrests. Vessells testified, however, that it was Stidman who did the threatening.

On April 1, 1983, Vessells conversed by telephone with Willie Moore, the father of Hosea Moore. The elder Moore, who faced state charges in an unrelated matter, testified that when he told Vessells that Stidman was going to testify, Vessells told Moore that he would kill Stidman. He instructed Moore to go to a pay telephone and to leave the number with his wife. Moore testified that he immediately called the FBI because he did not want to be involved in a killing. He left an FBI telephone number with his wife to give to Vessells and then went to the FBI office.

Shortly after 6:30 P.M. that evening, Vessells called Moore at the FBI number and the conversation was recorded. Throughout the discussion Vessells indicated that if Moore could get Stidman drunk and coax him to go with Moore to a pre-arranged location, then Vessells would meet them and see to it that Stidman would never testify. Vessells stated that Stidman would be taken down a one-way road, would disappear from existence and would never be found. Vessells described the operation as "getting rid of a headache."

Vessells called Moore again at the FBI office at 3:00 P.M. the next day. Vessells told Moore to get Stidman drunk and to arrive at a location outside of Tunica, Mississippi at 7:00 P.M. Vessells stated that if Stidman resisted, the two men would "knock him [Stidman] in the head." Vessells also instructed Moore to be certain that Stidman was not "wired" by his "friends" because that was how Johnson had been caught. The FBI staked out the Tunica location and arrested Vessells when he arrived in a pickup truck. Agents recovered a .380 automatic pistol, a knife and a tear gas cannister from behind the seat. They also found the FBI telephone number on Vessells' person.

---

1. The robbers were to place tape over the eyes and mouths of the people in the store.

2. Although there was evidence that a .38 caliber pistol had been transported from Memphis to Ferguson, that gun was not recovered.

Vessells and Scaife presented alibi defenses to the conspiracy and weapons charges. On the § 1512 charge Vessells claimed that since Stidman had been threatening him, he was going to drive Stidman (who was married) to California in order to live with a "girl friend."

## II.

We initially consider certain pre-trial matters. Both defendants contend that the indictment should have been dismissed because the Speedy Trial Act was violated. The record shows that both defendants were arrested on April 2, 1983. Although Scaife made bail, Vessells remained incarcerated. The indictment was filed on April 12.[3] The jury was selected on June 30 and trial began on July 11.

The seventy day time limit of 18 U.S.C. § 3161(c)(1) applies to both defendants. In addition, the ninety day time limit of 18 U.S.C. § 3164(b) applies to Vessells because he remained incarcerated before trial. The defendants contend that these time periods ceased running on July 11, 1983 when the trial started rather than on June 30, 1983 when the jury was selected.

Under normal circumstances, a trial begins for purposes of the Act when the *voir dire* process begins. *See United States v. Richmond*, 735 F.2d 208, 211 (6th Cir.1984); *United States v. Whitaker*, 722 F.2d 1533, 1535 (11th Cir.1984); *United States v. Howell*, 719 F.2d 1258, 1262 (5th Cir.1983). Nevertheless, a district court may not attempt to evade the spirit of the Act by conducting *voir dire* within the statutory time limits and then ordering a prolonged recess with an intent to pay mere "lip service" to the Act's requirements. *Richmond*, 735 F.2d at 211. In the present case, the district judge selected

the jury on June 30 and then recessed the court until July 11 so that he could attend the Sixth Circuit Judicial Conference. The district judge was required by both statute and court rule to attend that conference. *See* 28 U.S.C. § 333; Rule 16(a) of the Rules of the Sixth Circuit. Under these circumstances, the district court's decision to select the jury and then recess until July 11 cannot be said to have been made with an intent to evade the requirements of the Act. We hold that the seventy and ninety day time periods ceased running on June 30, 1983.

The 1983 calendar reveals that June 30 was the seventy-ninth day after April 12, the date of the indictment. The seventy day limit was not exceeded, however, because the record discloses more than a sufficient number of automatically excludable days under 18 U.S.C. § 3161(h)(1)(E), (F) and (J). In addition, the seventy day limit was not exceeded as to Scaife because he and his attorney both signed a written waiver of the statutory right to a speedy trial. Contrary to Scaife's assertion, nothing in the record supports the contention that the district court refused to accept the waiver. Moreover, the ninety day limit was not exceeded as to Vessells because June 30 was the eighty-ninth day after April 2, the date of Vessells' arrest. Further, had the ninety day limit been exceeded, Vessells' remedy would have been release rather than dismissal of the indictment. *See United States v. Gaines*, 563 F.2d 1352, 1357 (9th Cir.1977); *United States v. Krohn*, 558 F.2d 390, 393 (8th Cir.), *cert. denied*, 434 U.S. 868, 98 S.Ct. 207, 54 L.Ed.2d 145 (1977); *United States v. Tirasso*, 532 F.2d 1298, 1299–1300 (9th Cir.1976).[4]

A second issue involves the defendants' respective pretrial motions for severance

---

**3.** Since the first appearances had occurred earlier, the date of the indictment was the relevant date for purposes of the seventy day time limit of 18 U.S.C. § 3161(c)(1). Since the day that the indictment was filed was excludable, *c.f. United States v. Richmond*, 735 F.2d 208, 211 (6th Cir. 1984) (if the first appearance occurs after the indictment is filed, the day of the first appearance is excludable), the first countable day under the seventy day time limit was April 13, 1983.

**4.** The cited cases were decided when 18 U.S.C. § 3164 was an interim rule. In 1979, Congress deleted those parts of § 3164 that had rendered it only an interim rule.

under Federal Rule of Criminal Procedure 14. Vessells argues that Count III should have been tried separately. Scaife asserts that he should not have been tried with Vessells because of the prejudicial impact of the evidence concerning Count III, a count under which he was not charged. In addition, Vessells argues for the first time on appeal that he and Scaife were misjoined in violation of Federal Rule of Criminal Procedure 8(b).

■ Since the question of joinder logically precedes the question of severance, *see United States v. Hatcher*, 680 F.2d 438, 440–41 (6th Cir.1982), we first address Vessells' misjoinder argument. As has been indicated, Vessells' pre-trial motion was filed solely under Rule 14. Accordingly, the question arises of whether a Rule 14 severance motion preserves a Rule 8 objection to joinder. Unfortunately, this court has filed two irreconcilably conflicting decisions on this issue.

In *Hatcher*, this court held that a Rule 14 severance motion preserves a Rule 8(b) misjoinder objection provided that the motion notified the district court that the indictment alleged a crime or crimes with which one of the defendants was not connected. *Id.* at 441. Vessells' severance motion satisfied this standard (app. at 394). On the other hand, this court held in *United States v. Williams*, 711 F.2d 748, 751 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 433, 78 L.Ed.2d 365 (1983), that a Rule 14 severance motion does not preserve a Rule 8 misjoinder objection for appeal. The *Williams* panel followed decisions of other circuits in an attempt to avoid an intercircuit conflict. *Williams*, 711 F.2d at 751. Other circuits have indeed held that a Rule 14 severance motion does not preserve a Rule 8 misjoinder objection. *See United States v. Drum*, 733 F.2d 1503, 1507–08 (11th Cir.1984); *United States v. Bailey*, 675 F.2d 1292, 1294 (D.C.Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982); *United States v. Barbosa*, 666 F.2d 704, 707 (1st Cir.1981);

*United States v. Hedman*, 630 F.2d 1184, 1200 (7th Cir.1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). This panel must choose between two conflicting decisions of this court. We agree with the *Williams* panel that intercircuit conflicts are to be avoided if possible. Consequently, we follow the *Williams* decision and hold that Vessells' misjoinder argument has not been preserved for appeal.

■ Both defendants filed Rule 14 severance motions. The district court's denial of severance may not be disturbed absent an abuse of discretion. *See Williams*, 711 F.2d at 750; *United States v. Warner*, 690 F.2d 545, 552 (6th Cir.1982). In order to demonstrate an abuse of discretion, the defendants must make a strong showing of prejudice. *See Williams*, 711 F.2d at 751; *United States v. Davis*, 707 F.2d 880, 883 (6th Cir.1983); *Warner*, 690 F.2d at 552. Specifically, there must be a substantial risk that the jury was unable to separate the evidence on each count as to Vessells. *See Williams*, 711 F.2d at 751. As to Scaife's claim, there must be a substantial risk that the jury was unable to separate the evidence against each defendant. *Id. Davis*, 707 F.2d at 883. Furthermore, even if some showing of jury confusion is made, this factor must be balanced against society's need for speedy and efficient trials. *Davis*, 707 F.2d at 883.

■ Having thoroughly reviewed the portions of the record submitted by the parties and the tape recordings that we requested on our own motion, *see infra*, we hold as to Vessells that there is no substantial risk that the jury was unable to separate the evidence on Count III from the evidence on Counts I and II.[5] The most significant evidence on Counts I and II was: (1) the testimony of witnesses Stidman, Johnson, Jones, Armstrong and FBI Agent Young and (2) the tape recordings bearing exhibit numbers 9 and 9A. In contrast, the most damaging evidence on Count III was the testimony of Willie

---

**5.** The record submitted by the parties contains no direct proof of inability to separate the evidence, such as questions by the jury to the court during deliberations indicating confusion.

Moore and the tape recordings bearing exhibit numbers 11 and 12. Although the testimony of FBI Agents Young and Johnson touched on all three counts, we are convinced that it was readily apparent to the jury which count or counts this testimony was relevant to at a given moment. The district court did not abuse its discretion in denying Vessells' severance motion.

■ We hold likewise as to Scaife. Scaife's major argument is that the evidence concerning Count III, under which only Vessells was charged, was so inflammatory that separate trials were necessary. Although we agree with Scaife that Moore's testimony and Exhibits 11 and 12 clearly showed that Vessells contemplated either killing or doing serious bodily injury to Stidman, the fact remains that neither Moore's testimony nor Exhibits 11 and 12 mentioned Scaife. Furthermore, the district court instructed the jury that "Mr. Scaife is not charged with this crime [violating § 1512], and therefore should not be considered in connection with Count 3." Although afforded an opportunity to do so before the jury retired, Scaife did not request an instruction that the evidence presented by the government in order to prove Count III could not be considered by the jury in reaching its verdict as to Scaife on Counts I and II.[6]

Finally, we hold that even if trying the defendants together resulted in prejudice to Scaife, this factor would be outweighed by society's interest in efficient trials. The general rule is that co-conspirators should be indicted and tried together because the evidence of conspiracy as to each defendant tends to be the same. *See, e.g., United States v. Robinson*, 707 F.2d 872, 879 (6th Cir.1983). That concern applies in this case. The district court did not abuse its discretion in denying Scaife's severance motion.

■ The remaining challenges to the district court's pre-trial rulings are raised

solely by Vessells. First, the district court refused to suppress the .380 automatic pistol found behind the seat of Vessells' truck at the time of his arrest. The court ruled correctly. In *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), the Supreme Court held that the entire passenger compartment of a vehicle may be searched when a custodial arrest is made.

■ Second, Vessells contends that the FBI coerced Willie Moore and Charles Stidman into permitting the telephone conversations of April 1 and April 2 to be recorded. Moore and Stidman are said to have been coerced because they needed help in connection with charges pending against them.[7] We disagree. Both Moore and Stidman testified that they freely consented to recording the conversations. The record is devoid of evidence to the contrary. Moreover, even if the authorities promised to help Moore and Stidman in consideration for their cooperation, this court has held that consent to have conversations recorded is not vitiated by governmental promises of leniency. *See United States v. Franks*, 511 F.2d 25, 30–31 (6th Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (1975).

■ Third, Vessells argues that the tape recordings used by the government contained so much inaudible material that they should not have been admitted. The law is clear that a district court's decision to admit tape recordings may only be reviewed for abuse of discretion. *See Robinson*, 707 F.2d at 876; *United States v. Enright*, 579 F.2d 980, 988 (6th Cir.1978). Abuse of discretion is present only where the unintelligible portions of a tape recording are so substantial that the recording as a whole is rendered untrustworthy. *Robinson*, 707 F.2d at 876. The defendants have not presented to this court any of the tapes used by the government at trial. On its own motion, this court requested copies

---

**6.** We do not address the issue of whether it would have been reversible error for the district court to have refused such a request.

**7.** Stidman had been charged in connection with the unsuccessful robbery. Moore was facing state charges in an unrelated case.

of tape recordings bearing exhibit numbers 9, 9A, 11, 12 and 34 in connection with its review of other assignments of error. None of these recordings contains unintelligible portions so substantial as to render them untrustworthy. Since no other tape recordings (if any were used) are before this court, Vessells' argument must be rejected.

### III.

■ Both defendants challenge certain rulings made by the district court during trial. First, the defendants contend that the district court should have directed an acquittal because the government never established venue.[8] A defendant must, of course, be tried in the state or district where the crime was committed. *Travis v. United States*, 364 U.S. 631, 634, 81 S.Ct. 358, 360, 5 L.Ed.2d 340 (1961). Although venue generally is not a factual element of a crime, it nevertheless is an essential part of the government's case. *United States v. Branan*, 457 F.2d 1062, 1065 (6th Cir. 1972). If the government does not establish venue and the defendant objects at trial, then an appellate court must reverse the conviction. *Id.*

■ We hold, however, that the government adequately proved venue. Congress has provided that:

[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of or prosecuted in any district in which such offense was begun, continued or completed.

18 U.S.C. § 3237(a). Furthermore, venue is proper in conspiracy prosecutions in any district where the conspiracy was formed or in any district where an overt act in furtherance of the conspiracy was performed. *See United States v. Winship*, 724 F.2d 1116, 1125 (5th Cir.1984); *Down-*

*ing v. United States*, 348 F.2d 594, 598 (5th Cir.1965). A conspiracy defendant need not have entered the district so long as this standard is met. *Id.*

■ The Western District of Tennessee was a proper venue for the conspiracy count because Johnson and Hosea Moore entered the conspiracy there.[9] Moreover, several overt acts in furtherance of the conspiracy were performed in the Western District of Tennessee. These included various conversations between Johnson, Jones, Armstrong and Hosea Moore in Memphis in preparation for the robbery and the rendezvous at Stidman's house in order to load guns in Jones' car before leaving for Helena, Arkansas. The Western District of Tennessee was a proper venue for Count II because the alleged unlawful carrying of firearms began in Memphis. Finally, the Western District of Tennessee was a proper venue for Count III because that is the district where the court and the grand jury were located. *See United States v. O'Donnell*, 510 F.2d 1190, 1192–94 (6th Cir.), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975).

The defendants' next assignment of error is that the district court should not have permitted the jury to replay Exhibits 9, 9A and 34 during deliberations. Before discussing this claim, additional facts must be stated. Both Exhibits 9 and 9A (the Jones body tape) had been admitted into evidence during trial (app. at 92–93). Although the tape bearing exhibit number 34 had been used during rebuttal to impeach Vessells' testimony, it had not been formally introduced as an exhibit. The record reveals that the government played part of the tape during rebuttal and that the defendants then insisted upon playing the entire tape to the jury. Vessells' attorney stipulated to the authenticity of the tape (app. at 365). During deliberations, the jury requested that Exhibits 9, 9A and the

---

8. The government argues that the defendants have raised this argument for the first time on appeal. We disagree. The record reveals that the defendants specifically objected to the quantum of proof on the venue issue (app. at 375).

9. Jones and Armstrong may not be counted among those who entered the conspiracy in the Western District of Tennessee because they were government informers. *See United States v. Pennell*, 737 F.2d 521, 536 (6th Cir.1984).

rebuttal tape be sent to the jury room. When the defendants objected that the rebuttal tape had not been made an exhibit,[10] the district court stated:

> The Court: Well, it ought to have been. What is the next number, Ginny?
>
> The Clerk: 34.
>
> The Court: All right, make it Exhibit 34.

■■■ A district court has broad discretion to permit a jury to take to the jury room any tape recordings that have been admitted as exhibits during trial. *See United States v. Sims*, 719 F.2d 375, 379 (11th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984); *United States v. Samples*, 713 F.2d 298, 303 (7th Cir.1983). Having reviewed the record, we conclude that the district court did not abuse its discretion in permitting Exhibits 9 and 9A to go to the jury room.

■■ The district court's decision respecting Exhibit 34 is more troublesome. Since that tape had not been admitted as an exhibit before the case went to the jury, we disregard the district court's action of belatedly assigning the tape an exhibit number. Allowing the jury to take the tape to the jury room was error. This error was harmless, however. A proper foundation had been laid for the tape and the defendants did not question the tape's authenticity or accuracy. Indeed, the defendants insisted upon playing the entire tape to the jury during rebuttal. Since the defendants have not even attempted to show prejudice, this technical error was harmless. *See United States v. Shafer*, 445 F.2d 579, 582 (7th Cir.), *cert. denied*, 404 U.S. 986, 92 S.Ct. 448, 30 L.Ed.2d 370 (1971). *Cf. United States v. Larson*, 722 F.2d 139, 145 (5th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1688, 80 L.Ed.2d 161 (1984) (transcripts); *United States v. Costa*, 691 F.2d 1358, 1362 (11th Cir.1982) (transcripts).

**IV.**

■■ The defendants next object that the government produced insufficient evidence to support the convictions. This court's standard of review is "whether the relevant evidence viewed in the light most favorable to the government could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt." *United States v. Meyers*, 646 F.2d 1142, 1143 (6th Cir.1981). The defendants expend much effort attacking the credibility and consistency of Stidman's and Johnson's testimony. The credibility and consistency of testimony are relevant to its weight and not to its admissibility, however. The weight to be assigned to Stidman's and Johnson's testimony was a jury question.

■■ Regarding Count I, the defendants also assert that the government produced insufficient evidence of the impact of their actions upon interstate commerce in order to support the convictions for conspiracy to violate the Hobbs Act. This court has repeatedly held, however, that only a *de minimus* impact upon interstate commerce need be shown in Hobbs Act prosecutions. *See United States v. Hollis*, 725 F.2d 377, 379 (6th Cir.1984); *United States v. Davis*, 707 F.2d 880, 884 (6th Cir.1983); *United States v. Harding*, 563 F.2d 299, 301–02 (6th Cir.1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978). The government clearly met that burden here. The owner of the general store testified that his store sold produce and hardware obtained from Clarksdale, Mississippi and sold meat and dry goods obtained from Memphis, Tennessee. The Clarksdale and Memphis items comprised twenty percent of the store's inventory. Furthermore, some of the store's customers were from outside of Arkansas. Thus, the government adequately demonstrated that the

---

10. Vessells contends that the district court responded to the jury's request in secret proceedings. This argument is completely frivolous. The district court informed counsel for both sides of the jury's request and defense counsel were afforded a full opportunity to object to sending the tapes to the jury room. Defense counsel exercised this prerogative. The district court scrupulously complied with the requirements of *Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975).

general store was involved in interstate commerce.

■■ As to Count II, the defendants argue that the district court erred in instructing the jury that the firearms were carried unlawfully rather than submitting that question to the jury. We agree with the defendants. In order to procure a conviction under 18 U.S.C. § 924(c)(2), or under 18 U.S.C. § 2 for aiding and abetting that offense, the government must demonstrate that firearms were carried unlawfully under a federal, state or local law; mere possession of a firearm while committing a felony is insufficient. *United States v. Nigro*, 727 F.2d 100, 107–08 (6th Cir.1984) (*en banc*); *United States v. Garcia*, 555 F.2d 708, 711 (9th Cir.1977). Moreover, the statute in question must be presented to the jury so that it may decide whether the firearms were carried unlawfully. *Nigro*, 727 F.2d at 108; *Garcia*, 555 F.2d at 712. Unless a defendant stipulates that firearms were carried unlawfully under federal, state or local law, a district court should not give an instruction that effectively takes this question away from the jury.

Contrary to the government's assertion, we hold that the defendants did not stipulate that the firearms in this case were carried unlawfully. The record discloses that the defendants only stipulated as to which statutes were relevant to the government's case. The defendants never stipulated that the firearms were unlawfully carried under those statutes (Tr. at 709–12). The defendants' convictions on Count II must be reversed.

■■ With respect to Count III, Vessells argues that the government never proved that Vessells knew that Stidman was going to testify before a federal grand jury or that Stidman was trying to communicate information regarding a federal offense to a federal law enforcement officer. Ves-

sells further contends that the government failed to prove that federal grand jury proceedings were pending when he was arrested and charged.

Vessells has misconstrued the knowledge requirement of 18 U.S.C. § 1512. Subsection (a) of that provision requires the government to prove knowing use of, or a knowing attempt to use, intimidation or physical force. Willie Moore's testimony, Exhibits 11 and 12 and Vessells' armed presence at the rendezvous site in Tunica, Mississippi collectively demonstrate that Vessells knowingly attempted to use intimidation or physical force against Stidman. Vessells clearly intended to prevent Stidman from either giving information to law enforcement officers or testifying in grand jury or other official proceedings. Furthermore, the plain language of 18 U.S.C. § 1512(d) indicates that the government was not required to prove that grand jury proceedings were pending at the time of the offense. Nor was the government required to prove that Vessells knew that a federal grand jury and federal law enforcement officers were involved. 18 U.S.C. § 1512(e)(1) and (2). *United States v. Baker*, 494 F.2d 1262 (6th Cir.1974), cited by Vessells, is distinguishable on the ground that it involved a prosecution under 18 U.S.C. § 1503 rather than under § 1512. We conclude that the government produced sufficient evidence to support Vessells' conviction on Count III.[11]

Another claim presented by Vessells is that the district court should have granted a new trial on the basis of newly discovered evidence or should have granted a hearing in order to review the new evidence. According to Vessells, Bob Johnson revealed in an interview done in connection with the preparation of Johnson's pre-sentence report that the robbery was a fake because

---

**11.** Vessells also contends that the district court erroneously instructed the jury that a knowing attempted use of "intimidation *or* physical force" must be shown. Although that is how § 1512(a) reads, the indictment alleged a knowing attempted use of "intimidation *and* physical force." This court recently rejected the same argument in *United States v. Murph*, 707 F.2d 895 (6th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 145, 78 L.Ed.2d 136 (1983). The court held that where a statute is written in the disjunctive and the indictment is in the conjunctive, the government's case may be proven, and the jury may be instructed, in the disjunctive.

the owner of the general store had helped plan it. Vessells contends that agreeing to commit a staged robbery does not violate the Hobbs Act.

Assuming *arguendo* that such an agreement would not transgress the Hobbs Act, we hold that the district court did not err in refusing a new trial or an evidentiary hearing. The district court's decision not to grant a new trial is reviewable only for abuse of discretion. *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). To obtain a new trial, a defendant must satisfy four criteria. The evidence: (1) must have been discovered after trial, (2) must not have been discoverable earlier in the exercise of due diligence, (3) must be material and not merely cumulative or impeaching, and (4) must be likely to produce an acquittal if the case were retried. *Id.* We address only the latter requirement.

The district court did not abuse its discretion in refusing to grant a new trial because the alleged newly discovered evidence would at best have created a conflict in the evidence rather than a likelihood of acquittal. The evidence contains numerous indications that the robbery was real. For instance, the Jones body tape (Exhibits 9 and 9A) recorded Johnson's instructions to Jones, Armstrong and Hosea Moore about how the robbery was to be performed. Johnson's instructions contain not the slightest indication that the robbery was staged. Moreover, Johnson specifically warned his three companions that the store owner had a gun beneath the cash register. If the robbery were a fake of which the owner were aware, then the owner obviously would not have reached for a gun when the "robbers" appeared. Thus, if the robbery were staged, it would have been unnecessary for Johnson to warn Jones, Armstrong and Moore about the gun beneath the cash register.

Furthermore, Johnson gave his companions detailed instructions on how to threaten the workers at the store, including the owner, if resistance were encountered. If the robbery were staged, however, there would have been no resistance and no instructions on how to handle resistance would have been necessary. Still further, the government's evidence showed that the store's telephone lines were to be cut in order to prevent the workers inside from calling for assistance. If the robbery were a fake, however, no one would have called the police and there would have been no need to cut the telephone lines. And, if the police or other assistance would not have been summoned, then it would have been unnecessary to have armed accomplices "covering" the robbers outside the store. Yet, the record contains evidence that Vessells, Scaife, Stidman and Johnson were to be stationed outside the store with guns in order to protect Jones, Armstrong and Moore while they were inside. Finally, if the workers in the store were to cooperate in the impending "robbery," then it would not have been necessary for Johnson to instruct Jones to park his car bearing Tennessee license plates around the corner so that the store workers would be unable to identify the car later for the police. Having evaluated the record, we hold that Vessells has not shown a likelihood of acquittal if he were retried. The district court properly refused to grant a new trial or a hearing on the basis of newly discovered evidence.

## V.

We have considered Vessells' arguments that the district judge should have recused himself and that the five-year sentence on Count III constituted cruel and unusual punishment. These claims are wholly unmeritorious.

The convictions of defendants Vessells and Scaife on Count II are REVERSED. Vessells' convictions on Counts I and III and Scaife's conviction on Count I are AFFIRMED.