918 F.2d 179
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wilbert M. GURLEY, Roosevelt Taylor, and Willie J. Williams,
Defendant-Appellees.
 Nos. 89-2384, 89-2418, 90-1071.
 United States Court of Appeals, Sixth Circuit.
 Nov. 13, 1990.
 
 Before NATHANIEL R. JONES and WELLFORD, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellants Wilbert Gurley, Dr. Roosevelt Taylor, and Willie Williams appeal their convictions for conspiracy to illegally distribute prescription drugs. Williams also appeals the district court's order of forfeiture. For the following reasons, we affirm the convictions and the order of forfeiture.
 
 
 2
 * On March 10, 1989, a superceding indictment[1] was filed charging defendant-appellants Dr. Roosevelt Taylor, Wilbert Gurley, and Willie Williams with conspiracy to illegally distribute prescription drugs, in violation of 21 U.S.C. Sec. 841(a)(1) and 21 U.S.C. Sec. 846. Counts two through fifteen charged Taylor with unlawful distribution of controlled substances, in violation of 21 U.S.C. Sec. 841(a)(1). The superceding indictment also charged Gurley with unlawful delivery of valium and talwin, in violation of 21 U.S.C. Sec. 841(a)(1). Allegations of forfeiture were filed pursuant to 21 U.S.C. Sec. 853 with respect to Taylor's home and Williams' motor home.
 
 
 3
 Dr. Roosevelt Taylor was a physician at Flint (Michigan) Osteopathic Hospital (FOH) for nearly twenty years before his privileges were revoked in 1980. Dr. Taylor sued FOH claiming that he was suspended from the hospital because he threatened to expose insurance fraud. His suit against FOH was dismissed in 1984. Willie Williams was the owner and operator of the Dort Prescription Center in Flint between 1985 and 1987. The indictment alleged that: (1) over a period of nearly two years Dr. Taylor wrote numerous prescriptions for controlled substances without a license and without a legitimate medical purpose; (2) Williams accepted the prescriptions, and dispensed them in generic form while billing at brand-name prices; and (3) Gurley assisted Dr. Taylor in the illegal distribution of prescription drugs.
 
 
 4
 A jury trial began on July 18, 1989. Gurley, Williams, and Taylor were found guilty on all counts on August 10, 1989. In December 1989, Taylor was sentenced to concurrent prison terms of eight, three, and one years; Gurley was sentenced to one year concurrent terms on each count; and Williams was sentenced to a six year term and a $15,000.00 fine. In addition, Williams was ordered to forfeit his motor home as well as all interest in the Dort Prescription Center, and Taylor was ordered to forfeit his residence. These timely appeals followed.
 
 II
 
 5
 Taylor's first argument is that the district court erred in preventing him from presenting a portion of his duress defense. At trial, Taylor sought to defend against charges that he wrote prescriptions without any legitimate medical purpose by claiming that he was threatened by government agents. These threats, as well as his prosecution, asserts Taylor, were part of a conspiracy against him by state and federal officials because of his attempts to expose insurance fraud at FOH.
 
 
 6
 Counsel for Taylor first raised the selective prosecution issue during opening statements. At that point, the district court dismissed the jury and allowed Taylor's lawyer to make an offer of proof. J.App. at 483-84. Taylor then testified about his contacts with individuals who he believed were from the U.S. Attorney's office and who threatened him with bodily harm because of his knowledge of insurance fraud at FOH. J.App. at 490-504. The district court found, at the conclusion of the hearing, that there was no evidence of a connection between these individuals and the U.S. Attorney's office.
 
 
 7
 Taylor's lawyer then argued that because Taylor believed the conspiracy to be true, he should be entitled to present all aspects of his theory of duress. Id. at 537. The district court ruled that because of a lack of evidence, Taylor would not be permitted to allege that this prosecution was instigated by FOH, working with the government, "to shut Dr. Taylor up." Id. at 857. The court allowed Taylor to present evidence as to other threats or intimidations against Taylor. Id. At other points during the trial, the district court precluded Taylor from introducing evidence of his dispute with FOH. Id. at 891-92, 981, 1029-30.
 
 
 8
 We review the district court's exclusion of Taylor's testimony regarding the "conspiracy" under an abuse of discretion standard. Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 157 (6th Cir.1988). An abuse of discretion exists with respect to an evidentiary ruling "when the reviewing court is firmly convinced that a mistake has been made." Id. This court requires a defendant asserting a duress defense to show "an immediate threat of death or serious bodily harm ... in a situation in which there was no opportunity to avoid the danger." United States v. Campbell, 675 F.2d 815, 821 (6th Cir.), cert denied sub nom. Fultz v. United States, 459 U.S. 850 (1982) (quoting United States v. Campbell, 609 F.2d 922 (8th Cir.1979), cert. denied, 445 U.S. 918 (1980)). In addition, "[i]f evidence is introduced, but it is apparent that all of the requirements of the coercion defense are not addressed, the trial court is not obligated to allow the evidence to remain for consideration by the jury." Id.
 
 
 9
 Taylor wanted to include his dispute with FOH as a part of his duress defense to provide a context for his belief that the threats were real. The district court did, in fact, instruct the jury on Taylor's duress defense. J.App. at 1221. Moreover, the district court went to great lengths throughout the trial to ascertain Taylor's theory of defense, and gave Taylor ample opportunity to present any relevant evidence. Even Taylor's lawyer conceded that he had been given "all kinds of latitude in this case." Id. at 1028. The district court found, however, that the possibility the jury could be confused or misled by the "conspiracy" involving FOH outweighed its probative value. Furthermore, the district court found that there was no evidence, other than Taylor's own testimony, to support his theory that he was being prosecuted for exposing fraud at FOH. As a result, we find that the district court did not abuse its discretion in excluding testimony concerning Taylor's relationship with FOH.
 
 III
 
 10
 Both Gurley and Williams argue that they were prejudiced by the district court's denial of their motions for severance. Fed.R.Crim.P. 14 allows a trial judge to sever defendants or grant separate trials if a party would be "prejudiced." The district court's denial of defendants' motions for severance is reviewed under an abuse of discretion standard. United States v. Scaife, 749 F.2d 338, 344 (6th Cir.1984). To show an abuse of discretion, defendants must make "a strong showing of prejudice ... [such that] the jury was unable to separate the evidence against each defendant." Id. Even if there is some prejudice, "this factor must be balanced against society's need for speedy and efficient trials." Id.
 
 
 11
 Gurley and Williams argue that "the bizarre, antagonistic nature of Taylor's [conspiracy] defense misled, confused and affronted the jury, and only severance could have prevented it." Gurley Brief at 27. In support, Gurley and Williams point to the testimony of Dr. Price, who was called as a character witness for Dr. Taylor. After it was revealed that Price had distributed cocaine to a government witness in this case, Price's testimony was stricken. Williams and Gurley now assert, without further elaboration, that this testimony destroyed any opportunity for their defenses to be evaluated separately by the jury.
 
 
 12
 The district court instructed the jury to evaluate each defendant separately:
 
 
 13
 Now, you should consider each instruction that I give you as applying separately and individually to each of the defendants on trial. While there are three defendants in this case, their guilt or innocence must be determined by you separately. There must be verdicts as to each of the defendants separately.
 
 
 14
 J.App. at 1220.
 
 
 15
 As the government points out, Williams and Gurley fail to specify which particular events sufficiently prejudiced their cases to justify a severance. United States v. Graham, 548 F.2d 1302, 1311 n. 8 (8th Cir.1977) ("[U]nsupported allegations of co-defendant misconduct and resultant prejudice are insufficient to justify a finding that the District Court abused its discretion in not granting their motions for severance."). Because Williams and Gurley have not demonstrated with sufficient detail that they were prejudiced at trial by Taylor's defense, we conclude that the district court's denial of their motions for severance was not an abuse of discretion.
 
 IV
 
 16
 Williams and Gurley argue that the evidence is insufficient to support their convictions for conspiracy under 21 U.S.C. Sec. 846. Gurley asserts that "[n]ot one of the several witnesses testifying either for the Government or the co-defendants suggested any agreement between defendant and the co-defendants to agree to do any illegal act[.]" Gurley Brief at 22. Williams argues that although he filled prescriptions issued by Dr. Taylor, the evidence does not support a finding of conspiracy to commit an illegal act. Both Williams and Gurley rely on United States v. Blasco, 702 F.2d 1315, 1330 (11th Cir.1983), for the propositions that "[a] defendant may not be convicted unless the evidence adduced at trial is sufficient to demonstrate his own complicity beyond a reasonable doubt. Guilt by association may not attach; the prosecution must individualize its proofs as to each alleged conspirator."
 
 
 17
 A conspiracy conviction should be affirmed "unless there is insufficient evidence from which a rational jury member could find beyond a reasonable doubt that the defendant was a member of a conspiracy." United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990) (citation omitted). This court requires "firm evidence of at least tacit coordination among conspirators in affirming conspiracy convictions." Id. at 162.
 
 
 18
 We find that, viewed in the light most favorable to the prosecution, there was sufficient evidence to support the conspiracy convictions. Testimony established that during the first quarter of 1987, Dort Prescription Center was the ninth largest purchaser of codeine-based products out of over 2,000 pharmacies in Michigan. J.App. at 562. An audit of Dort's inventory for half of 1986 and 1987 revealed significant shortages of codeine-based drugs and valium. Id. at 591-92. Williams kept a handgun within reach inside the pharmacy. Id. at 593. Williams also allowed at least eleven customers to refill prescriptions using multiple names, some using as many as fifteen or twenty names within a period of several months. In addition, during a one-month period in 1987, 91% of the prescriptions issued by Williams through Dort Prescription Center were written by Dr. Taylor. Id. at 604. During this period, Taylor did not have a license to issue prescriptions for controlled substances. Id. at 771. Dort also maintained very sporadic business hours. The pharmacy would be closed, and then open up and carloads of people would be in the parking lot. Id. at 723-24. An individual who worked next door to Dort testified that he observed individuals leaving the pharmacy and exchanging money and packages in the parking lot, and that most of Dort's customers were between eighteen and thirty-five years old. Id. at 724-25. A government informant, for whom Taylor wrote over 200 prescriptions without any medical examinations, also testified that Dort was the only pharmacy which would take Taylor's prescriptions. Id. at 699. Another informant testified as follows:
 
 
 19
 The first time I went to [Dr. Taylor's] office I went to the closest available pharmacy and had trouble filling the prescription. There were two pharmacies and I went to both of them by his home and neither would accept his prescriptions and I went back to his home and asked where do I get it filled and [Dr. Taylor] said take it to Dort Prescription Center.
 
 
 20
 J.App. at 739.
 
 
 21
 With respect to Gurley, an undercover police officer met him inside Taylor's home/office and purchased 400 valium and talwin tablets there from Gurley. Another government witness testified that he saw Gurley at Taylor's house over a dozen times "direct[ing] traffic" among buyers "lining up outside around the house." Id. at 736. Gurley's own testimony revealed that he filled prescriptions in several different names that were filled at Dort, and that Taylor wrote many prescriptions for Gurley as well. Id. at 1107, 1109, 1122.
 
 
 22
 Based on the aforementioned testimony, we find that there was sufficient evidence to support the conspiracy convictions of Williams, Taylor, and Gurley.
 
 V
 
 23
 Taylor and Gurley assert that the delays between their initial indictments on July 22, 1987, and the commencement of the trial on July 18, 1989 violated their rights under the Speedy Trial Act and the sixth amendment. This period included a sixteen-month delay due to Dr. Taylor's mental incompetency to stand trial between August 1987 and December 1989.
 
 
 24
 The Speedy Trial Act, 18 U.S.C. Sec. 3161 et seq., requires that a criminal defendant be brought to trial within seventy days of an indictment or the indictment should be dismissed. Section 3161(h) provides that certain periods of time may be excluded when calculating the seventy day period. Section 3161(h)(1)(A) excludes any "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant[.]" Section 3161(h)(4) exempts "Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." Other excludable periods of time are:
 
 
 25
 (7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.
 
 
 26
 (8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.
 
 
 27
 The district court's determination of the period of time which should be excluded from consideration under the Speedy Trial Act should be affirmed unless it is found to be clearly erroneous. United States v. Frey, 735 F.2d 350, 352 (9th Cir.1984). Taylor argues that his period of incompetency should not be excluded because "nothing changed during his period of commitment" in that he continued to assert his conspiracy theories regarding FOH after he was declared competent to stand trial. Taylor Brief at 28. Taylor does not cite any authority for the proposition that because his theory of defense remained the same, his period of incompetency for trial should not be excluded. Thus, this sixteen-month period is excludable time. Moreover, this court has followed the majority of circuits in holding that, under section 3161(h)(7), " 'an exclusion applicable to one defendant applies to all co-defendants.' " United States v. Holyfield, 802 F.2d 846, 847 (6th Cir.1986) (per curiam), cert. denied, 479 U.S. 1090 (1987). Thus, the sixteen-month exclusion applies to Gurley as well.
 
 
 28
 On December 28, 1988, Judge Newblatt "determined that the ends of justice will be served by starting excludable time December 22, 1988 until February 28, 1989 for the purpose of allowing Mr. Gurley to retain counsel and to allow counsel for both defendants a reasonable amount of time for the effective preparation of the case. 18 U.S.C. Sec. 3161(h)(8)(B)(iv)." J.App. at 180. Between February and May 1989, the district court was preoccupied with motions from Williams and Gurley dealing with a continuance, severance, discovery, suppression, and a bill of particulars. J.App. at 185, 205-29. This period of time is excludable under section 3161(h)(1)(F), which excludes "delay resulting from any pretrial motion[.]" United States v. Darby, 744 F.2d 1508, 1517-18 (11th Cir.1984), cert. denied sub nom. Yamanis v. United States, 471 U.S. 1100 (1985) (excluding time between filing and denial of motions). We conclude that Taylor and Gurley's Speedy Trial Act claims are without merit because once the excluded time is subtracted, the total delay was less than seventy days.
 
 
 29
 Gurley and Taylor also assert that their sixth amendment rights to a speedy trial were violated. To evaluate such claims, this court applies a four-part test weighing " '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' " Holyfield, 802 F.2d at 848 (quoting Barker v. Wingo, 407 U.S. 514, 530 (1972)). Although the length of delay in this case, nearly two years, was considerable, the reasons for the delay do not augur in defendants' favor. The incompetency of Taylor, Gurley's substitution of counsel, the superceding indictment, and the filing of motions were responsible for the delay. During this period, the defendants did not adequately raise the speedy trial issue, although Gurley did address the issue in response to the district court's show cause order in March 1988. J.App. at 132-36. Gurley complains that the lengthy delay prejudiced him because he suffered "anxiety and concern" and because he had to stand trial with "the bizarre Dr. Taylor." Gurley Brief at 15. Taylor claims prejudice because his glaucoma condition worsened during the delay, which made it difficult for him to read much of the evidence in the case. In weighing these factors, however, we cannot conclude that Gurley or Taylor's sixth amendment rights were violated.
 
 VI
 
 30
 Williams argues that the district court abused its discretion in not admitting his proposed exhibits 9, 9A, and 110. Exhibit 9 was Blue Cross/Blue Shield records regarding payments for drugs to Dr. Taylor. Exhibit 9A was a list of pharmacies other than Dort with which Taylor did business. Williams states that because the government was allowed to characterize Dort as a center of illegal drug activity, he should be able to present evidence to rebut the allegation that Dort did little except fill prescriptions for Taylor. Williams asserts that these exhibits should have been admitted to present an accurate picture of his total business volume. As the government states that 90% of Dort Prescription Center's business was through Dr. Taylor, Williams attempted to use this evidence to show that the 90% figure was incorrect.
 
 
 31
 The district court's determinations regarding admission of evidence are reviewed under an abuse of discretion standard. Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 157 (6th Cir.1988). The district court excluded the evidence as not relevant because the chart dealt with non-controlled items as well as controlled items, and it was not possible to ascertain from looking at the chart which were for the controlled substances. J.App. at 944-45, 1150-51. Thus, because it was not possible to differentiate the controlled from the non-controlled prescriptions, the district court concluded that admission of exhibits 9 and 9A would not accomplish any purpose. Id. at 1152.
 
 
 32
 The record reveals that the district court carefully considered the relevancy of exhibits 9 and 9A on more than one occasion, and took great care to determine if the difference between controlled and non-controlled substances could be discerned from the document itself. Given the district court's conclusion that the exhibits could not accomplish the purpose for which they were offered, we do not find an abuse of discretion in the exclusion of the evidence.
 
 
 33
 Williams also argues that the district court abused its discretion in admitting government's exhibit 110. Exhibit 110 was a prescription written by Dr. Patel in 1988 to a government witness and filled by Williams. Exhibit 110A, a police lab analysis of the drugs, was excluded by the district court because the prescription was written by a non-defendant outside the dates of the indictment. Id. at 935-36. Williams states exhibit 110 should not have been admitted because it was not evidence of an act in furtherance of the conspiracy, which ended in August 1987. The government claims the evidence was offered to support its claim that Williams distributed generic drugs but billed for brand name drugs. Government Brief at 39.
 
 
 34
 Williams fails to show how he was prejudiced through introduction of the exhibit. In addition, exhibit 110 need not have been introduced solely in order to demonstrate an overt act in furtherance of the conspiracy. The evidence could have been admitted to show intent, motive, or knowledge under Fed.R.Evid. 404(b). United States v. Young, 573 F.2d 1137, 1140 (9th Cir.1978). Thus, we conclude that the district court did not abuse its discretion in admitting exhibit 110.
 
 VII
 
 35
 Gurley's final argument is that the district court incorrectly denied his request to instruct the jury as to his duress claim. The judgment of the district court should not be disturbed on the basis of faulty jury instructions unless the instructions, "viewed as a whole, were confusing, misleading and prejudicial." Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir.1987).
 
 
 36
 Gurley's claim of duress focuses on the events of March 10, 1987, when Gurley arrived at Taylor's office and testified that he saw suspicious looking characters and that he felt threatened because they looked like gangsters. As a result, Gurley suggests that his sale of drugs to these individuals was under duress. The district court instructed the jury as to Dr. Taylor's theory of duress, but declined to do so with respect to Gurley because it found that there was no evidence whatsoever that Gurley was in any way the object of duress or coercion. J.App. at 1205. Gurley failed to establish the three elements of the duress defense--immediate threat of serious injury, well-grounded fear the threat would be carried out, and no chance of escape. As a result, we find that the district court's jury instructions do not merit reversal of the verdict.
 
 VIII
 
 37
 Finally, Williams argues that the motor home cannot be forfeited because it was owned by Dort Drug Corporation and not by him. Williams cites case law stating that forfeiture can only be applied to an item if the owner of the item is convicted of a crime. United States v. Unit No. 7 and Unit No. 8, 853 F.2d 1445, 1449 (8th Cir.1988).
 
 
 38
 The government apparently concedes that Williams personally does not own the motor home, because its argument on appeal is that Williams does not have standing to assert the rights of a third party, the Dort Drug Corporation. The government has also filed a civil complaint in the Eastern District of Michigan seeking to recover the motor home (United States v. 1983 Chevrolet Motor Home, No. 90-40038). The effect of the criminal forfeiture in this case, the government now argues, was to "merely extinguish[ ] any interest Willie Williams may have in the motor home." Government Brief at 45.
 
 
 39
 A subsequent civil forfeiture action should not affect this court's review of the instant case.[2] Williams does not point to, nor can we detect, any errors by the district court which would require that the judgment of forfeiture be disturbed. Thus, the judgment of forfeiture should be affirmed.
 
 IX
 
 40
 For the foregoing reasons, the judgment of forfeiture, and the convictions of Williams, Gurley, and Taylor, are AFFIRMED.
 
 
 
 [1]
 The original grand jury indictment, filed on July 22, 1987, charged Dr. Taylor with ninety-six counts of unlawful distribution of controlled substances, in violation of 21 U.S.C. Sec. 842(a)(1). Count ninety-seven alleged a forfeiture pursuant to 21 U.S.C. Sec. 853. The same indictment charged Gurley with three counts of delivery of valium and one count delivery of talwin, in violation of 21 U.S.C. Sec. 841(a)(1)
 
 
 [2]
 The civil action is currently pending in the district court before Judge Feikens. On August 31, 1990, an order extending stay of execution of judgment was entered. Apparently because he retains possession of the motor home, Williams was ordered to pay an $11,000.00 cash surety bond to secure the government's claim in the motor home