**UNITED STATES of America**

v.

**CONNEAUT INDUSTRIES, INC. and John P. Santos.**

**Crim. No. 93–036 P.**

United States District Court, D. Rhode Island.

May 17, 1994.

Edmond Round, Donald M. Lyon, Rebecca Thai, U.S. Dept. of Justice, Antitrust Div., Cleveland, OH, for plaintiff.

Justin S. Holden, Salter, McGowan, Swartz & Holden, Inc., Providence, RI, David L. Martin, Providence, RI, Peter Driscoll, Columbia, MD, Gerard Treanor, Preston Burton, Cacheris & Treanor, Washington, DC, for defendants.

## OPINION AND ORDER

PETTINE, Senior District Judge.

In this Fed.R.Crim.P. 29 motion, I address the following questions: whether there was a fatal divergence of proof from a single conspiracy as charged in the indictment (15 U.S.C. § 1) to separate and discrete conspiracies as argued in the closing argument; whether the jury verdict was consistent; whether 18 U.S.C. § 1512(b)(2)(B) is constitutional; and whether a pending official proceeding is a condition precedent to a charge of witness tampering under 18 U.S.C. § 1512(b)(2)(B).

I.

Defendants, Conneaut Industries, Inc. ("Conneaut") and John Santos ("Santos"), have been charged under a two count indictment. Count One charges the defendants with conspiracy to fix prices in the packaged

fiberglass yarn industry from November 1991 until at least January 8, 1992 in violation of 15 U.S.C. § 1 (1988) (the Sherman Act). Count Two charges the defendants with witness tampering: "[defendants] knowingly, corruptly persuaded Mary Duquette with intent to cause or induce Mary Duquette to alter, destroy, mutilate, or conceal certain documents in the possession, custody and control of Conneaut Industries, Inc. with intent to impair the integrity of those documents or the availability of those documents for use in official proceedings before [the] Grand Jury in the Eastern District of Kentucky, in violation of 18 U.S.C. § 1512(b)(2)(B)." Indictment at 5–6.[1]

At the close of the Government's evidence, the defendants moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). As to Count One, charging John Santos and Conneaut Industries, Inc. with conspiracy, I denied the motion; as to Count Two, charging John Santos and Conneaut Industries, Inc. with witness tampering, I granted the motion as to John Santos and denied it as to Conneaut Industries, Inc. The defendants renewed their Rule 29(a) motion at the close of all the evidence. I reserved ruling on the motion at that time and submitted the case to the jury. The jury could not reach an agreement on the conspiracy charge against John Santos and found Conneaut guilty on both Counts One and Two. Thus, I must now decide whether the defendants' motion for judgment of acquittal should be granted and the jury verdicts set aside.

## II.

Rule 29(a) states in pertinent part:

The court on motion of a defendant or its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Fed.R.Crim.P. 29(a).

My task is to review the record to determine whether the evidence and all legit-

imate inferences therefrom, taken as a whole and in the light most favorable to the prosecution, would allow a rational trier of fact to determine beyond a reasonable doubt that the defendants were guilty as charged. *United States v. Mena–Robles,* 4 F.3d 1026, 1031 (1st Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 1550, 128 L.Ed.2d 199 (1994); *United States v. Acevedo,* 842 F.2d 502, 503 (1st Cir.1988); *United States v. Patterson,* 644 F.2d 890, 893 (1st Cir.1981). Should the motion be denied, then "[t]he jury is free to choose among reasonable constructions of the evidence and is entitled to resolve any issues of credibility for or against any such reasonable construction." *United States v. Gonzalez–Torres,* 980 F.2d 788, 790 (1st Cir. 1992). "Thus, the jury is empowered to accept or reject, in whole or in part, any testimony." *Mena–Robles,* 4 F.3d at 1031. With this standard in mind, I now turn to the merits of the defendants' motion.

## III.

### I.  *Count One: Conspiracy to Fix Prices*

In support of their motion to dismiss Count One, defendants argue that there is insufficient evidence to support a finding of a single conspiracy; that there is insufficient evidence to support a finding of multiple conspiracies; and that there is a fatal variance of proof between the indictment and the evidence presented at trial. I will first address defendants' variance argument.

### A.  *Variance of Proof—Facts*

Defendants argue that "there is a wide divergence of proof between the single conspiracy charged in the indictment and the government's new and improved theory, not alleged in the Indictment but foisted upon Conneaut after proof of the Atlanta conspiracy[2] failed to materialize, that there existed separate and discrete conspiracies, each of which involved its own isolated agreement to fix prices." Mem. of Law in Support of

---

**1.**  This case was transferred to this District.

**2.**  The "Atlanta conspiracy" is explained and set forth in the factual recitation, *see infra* pp. 118–119.

Second Supp'l Motion in Support of Def. Conneaut's Motion for Judgment of Acquittal (hereinafter "Second Supp'l Motion") at 6–7.

Conneaut Industries, Inc. and Atkins and Pearce, Incorporated were two competing corporations engaged in the business of selling repackaged fiberglass yarn. John Santos was the general manager of Conneaut responsible for the company's entire operation; Brian Perry, unindicted co-conspirator, was employed by Atkins and Pearce as a salesman with virtual final authority to set prices at which yarn would be sold. They vigorously competed against each other in the same market area. In November of 1991, they met at a convention in Atlanta, Georgia where, the Government argues, the conspiracy was conceived and hatched; "it consisted of a continuing agreement, understanding and concert of action ... to fix, raise and maintain prices of packaged fiberglass yarn in the United States." Indictment at 2. This asserted agreement in Atlanta is premised entirely on the following testimony, as elicited from Perry at trial.

Q. Do you recall what Mr. Santos said to you in that conversation?

A. Yes.

Q. What did he say?

A. He asked if Atkins and Pearce was going to continue with the price increase that was being announced, and to go into effect in January of '92. He said that, you know, we'd been eating up each other so damn long it's getting, you know, it's getting tiring. That there's—there's enough business out there that he could—he wanted to do more boating and I could play more golf.

Q. Did you reply?

A. It sounded great, you know.

Q. Do you recall what you said to him?

A. Exactly—it was something to the effect that I'm not—something—I'm not that good a golfer or something like that. You know, it—it was a sly remark.

Q. You just said Mr. Santos asked you whether you were planning to go through with a price increase you were announcing to the industry?

A. Correct.

Q. Did you reply specifically to that remark?

A. I—I told him that the price increase was to go into effect in January of '92, but I would not lose market share based on the price increase.

Q. What did you mean by that?

A. If—if I raised the price of an account and they got the product cheaper somewhere else, I would meet the price in order to avoid losing the account.

Q. Did Mr. Santos reply to that statement of yours?

A. I don't remember. I'm sorry.

Q. Did Mr. Santos say anything about whether Conneaut was—was or was not planning a price increase?

A. Yes.

Q. What did he say?

A. He said it would go along with it for '92.

Q. Excuse me?

A. It would go along with that for a price increase.

Q. What did you understand by that remark?

A. I interpreted it as if I raised my prices in '92, he would raise his prices in '92.

Q. Now, as a matter of fact, were you planning a price increase in November of '91?

.    .    .    .    .

A. Yes, to go into effect January of '92. Tr., 1/12/94 at 57–60 (testimony of Perry).

Following this Atlanta meeting, Santos and Perry continued contacting each other. In mid-November of 1991, Santos phoned Perry and asked if he had received a request for a price quote from PMC, a customer, and suggested that if he had, Perry should quote high on PMC's quotation request since he, Santos, already had the business—a high quote from Perry would help a price increase to go into effect in 1992. Perry agreed to do so since he did not want the business anyway but did want a price increase effective in 1992. After further conversations with Santos, during which prices were set, Perry did indeed submit inflated prices to PMC. He

testified, "I was deliberately quoting high basically, hopefully, to get the price increase, the general price increase to be better accepted through the industry with that high quote." *Id.* at 76.

As to another customer, Independent Cable, Perry and Santos again had conversations concerning price quotations. The record is not entirely clear when these took place, but there is no doubt there was an agreement. Perry faxed to the defendant Conneaut the price quotations that he, Perry, and Santos agreed Atkins and Pearce was to charge Independent Cable. Perry did this to "pacify" Santos and "hopefully it would take the '92 price increase last or go into effect." *Id.* at 102–103.

On or about December of 1991, Perry and Santos had another phone conversation during which Santos asked Perry to submit high quotations to Specialty Cable, a customer. Perry agreed, although he knew he would not get their business; he did so "with the hope that maybe the 1992 price increase that we were, we meaning Atkins and Pearce, was trying to get into effect would have a little more substance to it." *Id.* at 44. The prices Perry quoted were those that he and John Santos had agreed upon. *Id.* at 50.

Defendants allege that the Government failed to plead these multiple conspiracy theories with sufficient specificity to allow them to defend themselves adequately. "Had the indictment alleged separate and discrete conspiracies between Santos and Brian Perry, the defendants would have employed a different defense strategy to answer allegations of separate conspiracies." Second Supp'l Motion at 7. Finally, defendants argue that "should a court find that multiple conspiracies existed, but not the single conspiracy charged in the Indictment, that court must charge the jury with a cautionary instruction as to a finding of separate conspiracies, distinct from the conspiracy alleged." Mem. of Law in Support of Third Supp'l Motion in Support of Def. Conneaut's Motion for Judgment of Acquittal at 2. Defendants contend that the jury charge in this case did not provide the jury with an adequate cautionary instruction as to a finding of multiple conspiracies.

The Government argues that because there is sufficient evidence to support a finding of a single conspiracy, a cautionary jury instruction was not necessary. Further, the Government contends that even if there was a variance of proof between the indictment and the evidence at trial, the defendants' substantial rights were not affected. According to the Government, the indictment gave notice of all of the events which would be used at trial and defendants could not therefore have suffered any undue prejudice.

## B.  *Variance of Proof—Legal Analysis*

"Variance occurs when the facts proved at trial are different than those alleged in the indictment. Variance in the proof is grounds for reversal only when it affects the defendant's 'substantial rights.'" *United States v. Flaherty,* 668 F.2d 566, 582 (1st Cir.1981) (citations omitted). The First Circuit has defined "substantial rights" to mean two basic protections: "that [the defendant] have sufficiently specific information about the charges against him so that he can prepare an effective defense and will not be surprised at trial and that he not be subject to another prosecution for the same offense." *Id.*  In *United States v. Glenn,* 828 F.2d 855 (1st Cir.1987), the First Circuit set out a three part test to determine whether a variance exists and if it does exist, whether the variance is fatal:

(1) Is the evidence sufficient to permit a jury to find the (express or tacit) agreement that the indictment charges?

(2) If not, is it sufficient to permit a jury, under a proper set of instructions, to convict the defendant of related, similar conspirac[ies]?

(3) If so, does the variance affect the defendant's substantial rights or does the difference between the charged conspiracy and the conspiracy proved amount to harmless error?

*Id.*

Under this test, I only reach the second and third queries if I answer the first question in the negative. If I hold that the evidence is sufficient to permit a jury to find a single conspiracy, many of defendants' ar-

guments are irrelevant. Defendants argue that the relevant question is whether the defendants' substantial rights have been affected by a variance. However, if there is sufficient evidence to support the indictment as charged, there is no variance. Because I believe there is sufficient evidence of a single continuing conspiracy, I need not reach the defendants' remaining arguments raised under Count One. My reasons for such a finding are set forth below.

## C. *Evidence of a Single Continuing Conspiracy*

█ If the proper analysis of the evidence, which is relevant to this question, requires a purist approach, then it must be concluded that the Atlanta conversation, quoted *supra*, between Santos and Perry, does not evidence a specific conspiratorial agreement to raise prices. Santos expressed his desire that they "stop beating up each other" in exchange for leisure time. Tr., 1/12/94 at 58. Perry's reply was non-committal. Santos then asked if Perry was "planning to go through with a price increase." *Id.* Perry gave an affirmative reply which evoked from Santos his voluntary, unsolicited statement that "he would go along with it for '92," *id.* at 59, thereby meaning that if he, Perry, raised his prices, he, Santos, would do likewise. Santos' reply was a unilateral statement not verbally adopted nor encouraged by Perry. However, "[i]t is not necessary to find an express agreement in order to find a conspiracy. It is enough that a concert of action is contemplated and that defendants conformed to that arrangement." *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 142, 68 S.Ct. 915, 922, 92 L.Ed. 1260 (1948). "No formal agreement is necessary to constitute an unlawful conspiracy ... the essential combination in violation of the Sherman Act may be found in a course of dealings or other circumstances as well in any exchange of words." *American Tobacco Co. v. United States*, 328 U.S. 781, 809, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946).

I find "that a concert of action" was hatched in Atlanta and that the subsequent conduct of Perry and Santos confirms such a conclusion. "Because of the secretive nature of the crime, it is recognized that the agreement may be express or tacit. The agreement, whether tacit or express, may be proven by circumstantial as well as express evidence." *United States v. River–Santiago*, 872 F.2d 1073, 1079 (1st Cir.1989).

I agree with the Government that the "[k]ey in determining whether the conspirators were involved in a single or in multiple conspiracies is the existence of a common goal or over-all plan." United States' Mem. of Law in Response to the Court's March 2, 1994 Letter.

> While the nature of the illegal activity, the method of operation, and the scope of conspirator involvement are factors to be considered in determining whether a single conspiracy has been proved, if the totality of the evidence is adequate to demonstrate that all of the alleged coconspirators directed their efforts toward the accomplishment of a common goal or over-all plan, then the existence of a single conspiracy can be found.

*United States v. Drougas*, 748 F.2d 8, 17 (1st Cir.1984).

Perry's testimony, which I accept as truthful, clearly establishes that he and Santos directed their efforts toward a price fixing common goal. The record is clear that in mid-November of 1991, following a phone call from Santos, Perry agreed to and did quote high on PMC's quotation request; prices submitted by Perry to Independent Cable were the result of an agreement he had made with Santos; on or about December of 1991, as the result of another phone conversation between Perry and Santos, high quotations were submitted to Specialty Cable. The common goal shared by these conspirators was to establish an overall plan to fix prices, whether or not one or the other obtained the business.

I quote telling portions of the transcript, which were also pointed out by the Government in its April 1994 Memorandum at 10:

> I was deliberately quoting high [to PMC] basically, hopefully to get the price increase, the general price increase to be

better accepted through the industry with that high quote.

Tr., 1/12/94 at 76 (testimony of Perry). I was trying to pacify John with—with these prices, with the quotations [to Independent Cable] and, again, trying to just hopefully it would make the '92 price increases last or go into effect.

*Id.* at 103.

Q. Was there any other reason for quoting high at Specialty Cable?

A. With the—with the hope that maybe the 1992 price increase that we were, we meaning Atkins and Pearce, was trying to get into effect would have a little more substance to it.

Tr., 1/13/94 at 44 (testimony of Perry). These three price quotes were, therefore, part of a single conspiracy to increase the price of repackaged fiberglass yearn. *See also* Tr., 1/12/94 at 62–63, 75–76, 98–99; Tr., 1/13/94 at 49–50 (testimony of Perry).

The testimony quoted above was unambiguous that Perry agreed to let Santos have PMC, Specialty Cable, and Independent Cable because he thought there would then be less resistance to the general 1992 price increase. This was a view suggested by Santos, acting on behalf of Conneaut. Perry testified:

> He [Santos] suggested, well, he told me that—that I should quote high on the PMC request for quotation because he already had all the business there, which was true, and that it would help the 1992 price increase stay, go into effect easier.

Tr., 1/12/94 at 62.

All this transpired during the timeframe of the indictment. I need not delve into other circumstantial evidence that further supports a single continuing conspiracy. Having found that there was a single conspiracy, parts 2 and 3 of the *Glenn* test, *see supra* p. 9, fall by the wayside.

The motion for judgment of acquittal as to John Santos is denied.

The question now arises, since the jury reported a disagreement on Count One as to John Santos, who was the only conspiratorial actor and agent of Conneaut allegedly conspiring with Perry, was it consistent for it to find Conneaut guilty?

## D. *Consistency of the Verdict*

■ John Santos was the only Conneaut employee involved in the price fixing conspiracy. It would seem, therefore, that since a corporation can only be held liable through the acts of its agents or employees, Conneaut cannot possibly be held guilty absent such a finding against Santos. Put another way, is the jury verdict inconsistent since it did not find Santos guilty yet convicted Conneaut, the only other conspirator on the same count? The answer is "No." The rule of consistency is no longer viable. We now give deference to the mystique of jury deliberations and conjecture as to jury cerebrations.

This question was exhaustively treated in a learned opinion authored by Judge Coffin, writing for the court, in *United States v. Bucuvalas,* 909 F.2d 593 (1st Cir.1990), an opinion mandated by the following language in *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

> The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity. *Dunn* [*v. U.S.,*] 284 U.S. [390] at 393, 52 S.Ct. [189] at 190[, 76 L.Ed. 356 (1932).]

*United States v. Powell, supra,* 469 U.S. at 475, 105 S.Ct. at 879.

> We therefore hold that the "rule of consistency" exception to the *Dunn* rule is no longer viable in light of *Powell.* As the Supreme Court has indicated in similar circumstances, we do not by so holding "deviate from the sound teaching that 'justice must satisfy the appearance of justice.'" *Standefer* [*v. U.S.,*] 447 U.S. [10] at 25, 100 S.Ct. [1999] at 2008[, 64 L.Ed.2d 689 (1980)] (quoting *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954)). But *Powell* instructs

that the appearance of justice is satisfied by a reviewing court's finding that the evidence was sufficient to support the jury's decision. 469 U.S. at 67, 105 S.Ct. at 478. As the defendant has stipulated that the evidence was sufficient to support his conspiracy conviction, the judgment is affirmed.

*Bucuvalas, supra,* at 597–98.

The evidence in this case was indeed sufficient to support the jury's Conneaut decision of guilt as set forth *supra.*

I find the jury's inability to reach a verdict as to Santos and its finding that Conneaut was guilty is not inconsistent and will not be disturbed.

## IV.

*Obstruction of Justice*

Here I will reiterate and reaffirm what I stated in my Memorandum and Order of January 21, 1994 issued in the course of the trial.

In Count Two of the indictment, both John Santos and Conneaut were charged with having "knowingly, corruptly persuaded Mary Duquette with intent to cause or induce Mary Duquette to alter, destroy, mutilate, or conceal certain documents in the possession, custody and control of Conneaut Industries, Inc. with intent to impair the integrity of those documents or the availability of those documents for use in official proceedings before [the] Grand Jury in the Eastern District of Kentucky, in violation of 18 U.S.C. § 1512(b)(2)(B)." Indictment at 5–6. On motion of the defendants, I granted a judgment of acquittal for John Santos as to this Count and denied the motion with regard to Conneaut.

The obstruction of justice charge is founded on the testimony of Mary Duquette, sister of Alice Santos, wife of defendant. Ms. Duquette was employed by Conneaut as an administrative assistant. She testified that during her employment, she reported to defendant Santos who "oversaw everything, all aspects of the business." Tr., 1/11/94 at 60.

Ms. Duquette testified that in early January 1992, she took a series of price quotes

(Exhibits 8, 10, 11, 12, 14, 31, 32, 33, 36), cut a portion of one, and whited-out long hand price notations on the others. She also testified that she took home other documents at the request of Alice Santos; she whited-out the information "because it had to do with pricing. And these weren't the valid prices, these were." Tr., 1/1/94 at 89. As I understand the testimony, the price quotes had typed prices followed by long hand price notations. The valid prices were the typed ones. The testimony was as follows:

Q. What was it about the fact that those were not valid prices that caused you to white out that information?

A. Alice had asked me to take anything that had pricing information on it, so I whited it out.

Q. Again, did she say why she wanted you to take this particular information home?

A. Not really.

*Id.*

        •        •        •        •        •

Q. Do you recall today what types of documents you were asked to remove from Conneaut's office?

A. Anything with pricing notes or calculations or whatever to do with pricing.... anything with handwritten notes on it, basically regarding prices.

*Id.* at 93.

I add here that Perry was fired by Atkins and Pearce. Though he did not know at the time why he was fired, he subsequently learned it was for price fixing. When Perry was told of the termination of his employment, he phoned Santos, who at that time was riding in his van with his wife on a business trip. Perry told him what had happened, i.e., he had been fired. All that happened relative to the documents took place following this conversation with Santos.

I found the prosecution had failed to present evidence sufficient to sustain a conviction of witness tampering with regard to John Santos since Mary Duquette testified that she did not remember having any conversations with John Santos, except perhaps small talk, on or around the day on which the

Government alleges that the "corrupt persuasion" occurred. The prosecution argued that, despite Duquette's testimony, "a number of facts, taken together, are circumstances that prove that John Santos, not Alice, told Duquette to remove documents from Conneaut's office." Mem. of United States in Opposition to Def. Motion for Judgment of Acquittal at 38. The Government listed the following facts: John Santos was the general manager of Conneaut, John Santos rather than Alice Santos was party to the alleged price fixing conspiracy, the information whited out by Duquette was in John Santos' handwriting, John Santos was in charge even when he was away from the office, Perry informed John Santos rather than Alice that he had been fired, Duquette testified that it was *probably* Alice who told her to remove pricing documents from the office (with the implication by the Government that it could have been John who gave such instructions, despite Duquette's specific testimony *to the contrary*); and that Duquette's proffered reason for why she was told to remove documents from the office ("in case anybody asked any questions about it, that nobody else knew what this stuff was,") Tr., 1/11/94 at 92, can lead to a presumption that John Santos expressed a concern that a federal investigator might ask questions about the pricing information.

■ I found that none of these items proved, even circumstantially, that John Santos rather than Alice Santos instructed Mary Duquette to remove pricing documents from the office. None of them had anything to do with the direct issue of the identity of the person who instructed Duquette to remove documents from the office. In my opinion, there was insufficient evidence for a rational jury to conclude that John Santos persuaded Mary Duquette to alter or conceal documents in violation of 18 U.S.C. § 1512(b)(2)(B). As a consequence, I granted defendant John Santos' motion for judgment of acquittal with regard to Count Two of the indictment.

■ It is more important to note, as is relevant to the present motion, that I also said that it is clear from the evidence that Conneaut was not implicated through the actions of John Santos. However, Conneaut could still be liable for wrongdoing based on the actions of Alice Santos. Again pointing to the record, Mary Duquette testified that to her belief Alice Santos instructed her to take certain Conneaut documents home with her:

Q. Why did you take documents home in early January 1992, Miss Duquette?

A. In one of the phone conversations that I had with who I believe was Alice, she asked me to.

Tr., 1/11/94 at 81.

Q. There appears to be correction fluid or white-out on Government Exhibit 8. Do you know how the white-out came to be there?

A. I put it there.

Q. Why?

A. I believe it was Alice that I was talking to on the phone. And I was asked to take documents—

.     .     .     .     .

Okay. I was asked to take the documents home.

*Id.* at 87.

Furthermore, she testified that Alice Santos held the position of purchasing agent and office manager. Instructions to an employee regarding the disposition of company papers is fully within the set of duties owed by an office manager to an employer. An employee is acting within the scope of his employment "when he is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities." *Lundberg v. State of New York,* 25 N.Y.2d 467, 306 N.Y.S.2d 947, 255 N.E.2d 177, 179 (1969). Therefore, I was not impressed with the defendants' argument that Alice Santos was nothing more than a low-level employee with no authority to act on behalf of Conneaut.

■ However, I was troubled by two other difficult issues raised by the defense. First, the defense raised the issue of the official proceeding requirement of 18 U.S.C. § 1512. Second, the defense argued that, should I find that the requirements of 18 U.S.C.

§ 1512 were met, I should then find that the statute itself was unconstitutional as applied to the facts of this case.

18 U.S.C. § 1512 states, in relevant part, as follows:

> (b) Whoever knowingly uses intimidation or physical force, threatens or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> (2) cause or induce any person to—
>
> (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability *for use in an official proceeding;*
>
> shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

(Emphasis added). Defendants argued that the United States had failed to proffer evidence that would show that Alice Santos instructed Mary Duquette to remove documents from the offices of Conneaut Industries with the intent to impair their integrity or availability for use in an official proceeding. Indeed, they maintained that neither official proceedings nor any investigation had begun at the time that Ms. Duquette removed the documents to her home.

At first blush, such an argument seems persuasive. However, 18 U.S.C. § 1512(e)(1) provides that "an official proceeding need not be pending or about to be instituted at the time of the offense." As the Second Circuit has explained,

> [t]he Victim and Witness Protection Act was enacted to protect those persons with knowledge of criminal activity who are willing to confide in the government. Consistent with this purpose, Congress explicitly overruled case law requiring that an official proceeding be pending in order for a defendant to be subject to prosecution for witness tampering.

*United States v. Gonzalez,* 922 F.2d 1044, 1055 (2d Cir.1991) (citations omitted), *cert. denied,* — U.S. —, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991). This statutory language and much of the case law interpreting it supports the conclusion that Conneaut, via Alice Santos acting as office manager, acted in violation of 18 U.S.C. § 1512 by instructing Duquette to remove papers, despite the fact that no official proceeding was yet pending or about to be instituted. *See Gonzalez,* 922 F.2d at 1055, 1056; *United States v. Scaife,* 749 F.2d 338, 348 (6th Cir.1984); *United States v. Allen,* 729 F.Supp. 120 (D.D.C.1989).

■ There is precedent, however, which while not ignoring the holdings of such cases as *Gonzalez,* nevertheless, teaches that "[w]ithout at least a circumstantial showing of intent to affect testimony at some particular federal proceeding that is *ongoing or is scheduled to be commenced in the future,*" conduct which would otherwise run afoul of § 1512(b)(2)(B) is not prohibited. *United States v. Shively,* 927 F.2d 804, 812–813 (5th) (emphasis added), *cert. denied sub nom., Johnson v. United States,* 501 U.S. 1209, 111 S.Ct. 2806, 115 L.Ed.2d 979 (1991). I find that here, the instructions Alice Santos gave to Duquette are strong circumstantial evidence that she certainly intended to affect, indeed bury, testimony and gave those instructions because she realized that a federal proceeding could be commenced in the future. Now, it is true that no specific date for the commencement of the proceeding had been set—at least no evidence to that effect was introduced. However, the language of the statute does not require that an official proceeding be actually pending; it requires the preservation of the integrity of evidence or its availability for use in an official proceeding; this must encompass an investigation that the involved individual has reasonable cause to believe may be about to commence. If this was not so, law enforcement could be thwarted by a defendant's coercive action against a person that results in the destruction of evidence of criminal conduct that would otherwise be available to law enforcement.

### E. *18 U.S.C. § 1512—Vagueness*

■ At the conclusion of the Government's case, the defendants, for the first time, challenged the constitutionality of 18 U.S.C. § 1512. They contend that if the government can apply 18 U.S.C. § 1512 to "instances where no investigation has been

instituted, then the language of the statute is unconstitutionally vague as applies to Conneaut." Response of Conneaut Industries, Inc. to Court's Letter Dated March 21, 1994 at 18. I gather from the defendants' arguments that they are saying this statute does not give fair notice of what is prohibited and does not provide an explicit standard for enforcement; as a consequence, it violates the Fifth Amendment's due process clause since it fails to provide sufficient notice of who is affected and what conduct is prohibited, i.e., it does not define the crime with sufficient definitiveness.

■ I cannot agree with the defendants. There is nothing vague in this statute when it is reasonably construed. On its face, it clearly proscribes specific conduct (corruptly persuading another to tamper with evidence "for use in an official proceeding"). Corruptly "means that the act must be done with the purpose of obstructing justice." *United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir.1981), *cert. denied sub nom., Phillips v. United States*, 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982). And Congress has stated no proceeding need be pending at the time of the act. Defendants contend in their application here that the statute is vague, for it can criminalize an innocent act (prosecution if an investigation seeks documents which were previously discarded). An innocent destruction of documents is not within the purview of the act; it specifically requires an intentional corrupt act designed to impair the object's integrity or availability as evidence—such conduct is not innocent conduct. However, it is clear that Congress intended that the law reach all "persons with knowledge of criminal activity." *Gonzalez*, 922 F.2d at 1055.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Love v. Butler*, 952 F.2d 10, 14 (1st Cir.1991). These conditions have been clearly met. "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *United States v.*

*Doremus*, 888 F.2d 630, 634 (9th Cir.1989), *cert. denied*, 498 U.S. 1046, 111 S.Ct. 751, 112 L.Ed.2d 772 (1991). As I see it, this law is "sufficiently clear as applied to [Conneaut]." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 500, 102 S.Ct. 1186, 1194, 71 L.Ed.2d 362 (1982).

There was adequate evidence from which the jury could infer a sufficient mens rea on the part of Alice Santos in instructing Duquette to remove the documents: the instructions were given after Santos learned that Perry had been fired; when told, he expressed concern by asking if Perry had kept any notes; Alice Santos and her husband, the defendant, were riding in their van when Perry and the defendant were having the telephone conversation; the documents Alice ordered be removed contained evidence of price fixing, i.e., price listings of Perry's company with certain prices covered with white-out; Duquette testified that she was told the documents were being removed, "that in case anybody asked any questions about it, that nobody else knew what this stuff was," Tr., 1/11/94 at 92; and Duquette testified that she was instructed to remove "anything with pricing notes or calculations or whatever to do with pricing," *id.*

I find little merit in the defendants' vagueness argument.

### Conclusion

I find there is sufficient evidence to support the indictment charging a single conspiracy; the conspiracy verdict on Count One is not inconsistent; Conneaut's guilt of witness tampering was established through the conduct of Alice Santos and 18 U.S.C. § 1512 is not unconstitutionally vague on its face and as applied in this case.

SO ORDERED.